All right. I'll call up the third case, BP v. Claimant ID. Mr. Jones, can I get the large print edition of this? It's fine. I was just looking at it myself. That's not mine. That's what we'll do without more paper, so we'll honor it. All right, sir, you're up. May it please the Court, I'm Stanton Jones, and I represent BP. The District Court abused its discretion by denying review in this case for two reasons. First, just like this Court's recent decision in the Texas Gulf Seafood case, the settlement program erroneously misclassified certain of the claimant's expenses as fixed or variable based solely on the label assigned to those expenses by the claimant rather than placing the expenses in their substantively correct categories, and as Texas Gulf Seafood held, this error warrants remand to reclassify the expenses. And second, of even greater significance, both in this case and more broadly for purposes of other claims going forward, the settlement program also seriously misapplied the settlement agreement by failing to resolve material discrepancies between the supplies expenses reported on the claimant's P&Ls, profit and loss statements, and its tax returns. Those discrepancies, I believe there should be no dispute as to their existence and amount. It also should be undisputed that they alter the amount of the award by over $100,000, and also that the settlement program undertook no effort to resolve those discrepancies, and appeal panels are split on this issue. The two distinct approaches have led to inconsistent results, and absent this Court's review and intervention, this issue will continue to recur, leading to more inconsistent results. So briefly on the first issue of the expense misclassification, this Court's recent published decision in Texas Gulf Seafood is on point, and I'll explain why. There, the settlement agreement labeled them supplies, and Exhibit 4D to the settlement agreement lists supplies as a fixed expense. But in reality, looking at the substantive nature of those expenses, they included both some fixed supplies and also some costs of goods sold, which Exhibit 4D lists as variable. This Court held that appeal panels were split on how to classify claimant expenses in these circumstances, and that this issue is critically important. It goes, in the Court's words, to the core of the settlement agreement, and has the ability to significantly alter the amount of awards. This Court accordingly held that the settlement program and the appeal panel had erred in misclassifying the expenses. It vacated and remanded with instructions to place the expenses in their substantively correct categories, meaning some fixed and some variable, and all of the same is true here. So here... Counsel, excuse me. What the appeal panel said in our case, in your case, is that they were aware of your argument of this improper calculation. We have conducted a de novo review. We don't feel particularly enlightened about some of what was provided to us. But after a full review of the record, no error in the program with regard to certain discrepancies, you may have, UBP may have a valid point, but then they applied the provision for the close enough for baseball under the rules governing the appeal process. In looking at the rules governing the appeal process, it does seem to me that if the appeal panel was saying, all right, maybe there was some mistake here, but we are following the fact, after looking at what would have been a proper calculation, one side's final offer, if that's the right word for it, is still closer to being the right result than the other, and we're going to apply this close enough rule, and so now we're redoing these thousands of claims more than we need to. Why isn't this different for that reason, that the — I gave you a lot of reasons — for the reason that the appeal panel noted the problem, said we looked carefully at all this, people writing their opinions, things that maybe didn't happen. I don't want to give away any secrets, but I'm taking them at their word. They looked at all of this, and they said that the closer answer is still the one that ultimately is the answer that they gave. Why doesn't that fit under the rules governing the appeal process? Respectfully, Your Honor, a couple of responses. First of all, with respect to the question of the discrepancy between the claimant's P&Ls and tax returns, because that discrepancy was never resolved at the claims administrator stage, the initial stage of review, no one knows what the correct award is. The whole point, the whole problem with the discrepancy is that the claimant's P&Ls for 2009 and 2010 list particular figures for the supply expenses. But when you compare that figure to the supplies expenses reported on the claimant's tax returns for 2009 and 2010, they don't match. And our whole argument, BP's entire contention throughout this proceeding, including here today, is that the settlement program's obligation under that circumstance, under the clear, plain text of the settlement agreement, the settlement program's obligation is to resolve the discrepancy, to figure out which one is right or is the correct answer somewhere in the middle. So without any resolution of the discrepancy, which again, it should be undisputed that the discrepancy exists and the amount of it. You can just look at the numbers on the page. Without any resolution of the discrepancy, you don't know what the correct award is. And so the appeal panel rules in this circumstance absolutely allow the appeal panel to remand to the claims administrator to resolve the discrepancy in those circumstances. The relevant rule, it's Rule 17d5 of the appeal panel rules, it says two things that are relevant. It says first, all appeal panel decisions shall be in conformity with the terms of the settlement agreement and applicable court rulings. And on both of the issues that we've raised, this award is not in conformity with either the terms of the settlement agreement or the applicable court rulings, which in this case include Texas Gulf Seafood. The rule also says that the appeal panel can remand if, quote, the information in the record is not sufficient to support either side's proposal. And that's true here, because the discrepancy... Is there any circumstance, you say it's true here, is there any circumstance where the appeal panel is required to remand? I realize you're saying that it would have been better in this case had they done so. Is there any requirement that the appeal panel remand? So I believe that they are required to remand in this case and in any case where there is an unexplained discrepancy between the claimant's P&Ls and tax returns. And you don't have to take my word for it. In several of the appeal panel decisions that we cited, the appeal panel held that there was an unexplained discrepancy that necessitated, that mandated a remand so that the claims administrator could resolve the discrepancy. Does the appeal panel have an option to employ this baseball process that we've talked about or remand? Are you saying that it's not optional at this point, it's mandatory that a remand occur? It's possible that for other types of issues there might be discretion. In this circumstance where the discrepancy is unquestionably material, it affects the award by over $100,000, it is unexplained. There has been no effort to figure out which is right, the P&L or the tax return. In that circumstance, I think the only proper course of action for the appeal panel is to remand so that the claims administrator can resolve the discrepancy one way or the other. You say you think that. It does seem to me that under the rules governing the appeals process, I don't know what the introductory numbers are, but subpart 5 or whatever the bigger category is, appeal panel decisions, so select one or the other of the final proposals, may remand only if it finds a new document has been introduced, don't have that here, or the information in the record is not sufficient to support which one is closer. And you seem to be saying the argument is different on the 50-50 division and on the section involving the profit and loss. It does seem to me that these rules seem to give some judgment to the appeals panel about, in fact, whether there is enough here for them to determine what answer is closer. And you're saying no, and it seems to me that's a competition matter or a factual matter that we may have to resolve. But does the Rule 17e, you're saying, if that's the right number, override this particular rule for governing the appeals panel? I think that whether you view it as mandatory to remand or discretionary, in the case like this where there is an unexplained discrepancy that alters the award by over $100,000, the only proper course would be to remand, even if that's a discretionary decision by the appeal panel. But I will tell you, and let me point you to some of the appeal panel decisions that we cited and what they said. Before you leave that, and you may have answered it implicitly, I'm just asking how these rules work. Are you saying that what I am quoting is, in fact, is it arguably subordinate to the rules that you're talking about? I'm not asking you to concede on this point. I'm asking you to help me understand, with your knowledge and experience in this area, how are these two supposed to interact? So I think that the best reading of the appeal panel rule, 17d5, that you read from, that authorizes the rule that authorizes a remand when the information in the record doesn't support either side's proposal, I think that is clearly the case when there is a large unexplained discrepancy between the P&Ls and the tax returns. And I don't see how, just under that rule alone, how the appeal panel could properly select either side's dollar proposal when, based on the discrepancy and the fact that the claims administrator never resolved it, no one knows what the correct award is. All BP is trying to do here is obtain a remand to the claims administrator so that the claims administrator, supported by a small army of accountants, program accountants, can resolve the discrepancy, right? This is their basic work of the accountants, to resolve discrepancies between the books, the P&Ls, and the tax returns, and that's... I think part of what's going on here is they're trying to keep from having a larger army doing this sort of thing, and that's the whole reason for the baseball process, is that we're not going to redo without some quite significant problem, and you're saying this is one of those categories. Well, let me ask you about the district court's refusal to review this. It does seem to me, you released Raising, whether we agree with it or not, that there are some inconsistencies in what's going on in the process that Judge Barbier needs to get a handle on. He seems to be stepping back after many years of being heavily immersed in this and choosing more than one. Give us the best reason why this one is something that Judge Barbier should have taken. Sure. So let me give you the best reason as to both of the two issues that we've raised. On the first issue involving the expense misclassification, this Court already held in a published decision in Texas Gulf Seafood that there was an appeal panel split, that the issue was not only important but went to the very core of the settlement agreement, and the Court held in Texas Gulf discretion by denying discretionary review. Okay? And it's the same circumstances here. So all we're asking for is that this Court simply follow published circuit precedent from Texas Gulf Seafood. On the discrepancy issue Are you saying this is the exact issue that was discussed in Texas Seafood? Yes, it is. So it's already being addressed. What's that? So it's already being addressed by that remand. Well, we need this claim to be remanded essentially to follow Texas Gulf Seafood. So it's not that he would need to resolve these inconsistencies. He needs to apply whatever his resolution was to your case. In fact, all he needs to do is send it back to the claims administrator, which is exactly what has already happened in Texas Gulf Seafood. Texas Gulf Seafood, this Court's published decision, resolved the substantive interpretive issue. This Court held that the correct interpretation of the settlement agreement is to place expenses in their substantively correct categories. So that's already resolved. All that needs to happen is for this claim, like the Texas Gulf Seafood claim, to get remanded from this Court back down past Judge Barbier to the claims administrator. Well, it's not really the same argument anymore. He doesn't need, and it's not a discretionary review anymore. It's really coming down to an error in the calculation, but it's only an error that becomes clear retroactively. It's respectfully, if this case had come up to this Court before Texas Gulf Seafood, we would be asking this Court to hold in the first instance that there's an appeal panel split. Discretionary review was warranted. But that's already happened. Essentially, all we're asking for now is what I would think of as, you know, in the Supreme Court parlance, like a GVR, like a grant, vacate, and remand. Just send it back. But you're no longer in the category, it seems to me, of Judge Barbier's discretion on review. Anyway, you've got 13 seconds left. We'll cover a whole other issue. On the discrepancy issue, the best case for the need for discretionary review is that there's not only a serious misapplication of the settlement in failing to resolve the discrepancy, there is an appeal panel split on that issue, too. And we cited all of the cases in our briefs. Many appeal panel decisions have held in circumstances that are materially identical to these, with an unexplained discrepancy, that remand is mandated, that it is necessitated, that it is necessary, that the claim must be remanded. Those are all words from appeal panel decisions that we cited to resolve the discrepancy. Other appeal panels like this one have held that there is no such rule, and they essentially just throw up their hands and use the revenue and expense figures from the claimant's P&L, even though those figures don't match up with the comparable numbers in the tax returns, without resolving it. And that's an appeal panel split. It's a quintessential basis for Judge Barbier's discretionary review, and it should have been granted here. I'll reserve the rest of my time for rebuttal. Thank you, Mr. Jones. All right. We'll hear from Mr. Dixit. May it please the Court. Sean Dixit for the claimant. Your Honor, the district court must be affirmed in this case. This case is an instance in where I believe BP was on a mission to get a ruling, which they received in Texas Gulf Rim. And this case is one of cases, probably many of them, that were sucked up into this desire to have administrative panel reviews, the appeal panel reviews, kicked back to the claims administrators for various reasons. Is this case different from the Texas Gulf Seafood case? Absolutely. Not only is it different, it's different for two very important reasons. They're wrong about the record. And I'm going to show you record citations where the claims administrator did the distinctions, did the category claims analysis that BP's asking for. And I'm going to tell you, BP abandoned a large chunk of their $100,000 claim to the claimant. In particular, they abandoned $36,000 of their $100,000 on this case. Before you get into that too much, are you arguing that there was such a discrepancy as has been highlighted by BP, but that it doesn't matter because of the process employed, which was blessed by the agreement and the appeals panel and Judge Barbier, and now you want us to do that? Or do you believe, are you arguing that there is, in fact, no such matter of fact? Yes. Not only is there no such matter of fact, I'm going to give you record citations. So you believe that there is no such discrepancy upon which the argument could be based that the appeals panel was in error? Correct. Okay. All right. Number two, I'm going to say the appeal panel's hands are tied in this case because BP abandoned $36,000 of their $100,000 number. When you do that in the appeal process, the appeals panels are tied. I don't know this for certain, but I believe it's called a baseball appeal because the appeals panel acts like an umpire in a baseball game, and there's two teams on that field. And when the umpire sees an out or a strike or a ball, he has to choose a team. He has to choose a side. It's a judgment decision. It's not like a judge sitting as fact finder or a jury sitting as fact finder in which you can hear all the evidence and come up with your own number. BP could give a number, claimant could give a number, and appeals panel cannot do that under 17D5. What happens is under 17D5, it comes to them and it comes either the administrative number or the claims administrative numbers or BP's number or the claimant's number. That's Texas Gulf. That's a huge distinction from this case. I'm really here today arguing on behalf of the accountants. My clients did not submit a number. My clients did not argue with the claims administrator. I gave you an exhibit, which is 900 from the record. That is the claims administrator accountant's notes, and that's significant. And I highlighted three. Item three is professionally prepared claim. The claimant did not provide a professionally prepared claim. That's significant. So when the claims administrator accountants, the accountants that BP's in love with, that BP argues on every argument, we should just do what the accountants say. They have a team of 100 accountants and we should follow the accountants. That's what this case is. My client accepted the accountant's number. The accountant's number gave it to BP and they distinguished it. They said, no, there should be three reductions made. They said the tax return versus PL argument for $30,000. Then they argued that there was a misclassification of license, permits, and benefits for a total of about $36,000. And then the maintenance versus, maintenance cost versus repair cost argument for about $4,000. What you did not hear on this appeal is argument regarding the misclassification of license, permits, and benefits for $36,000. They abandoned it. What you heard argument was on $34,916.07. That's what we're fighting over. Not the $100,000 number he's talking about, but $34,916.07. Now, under this standard of review, there's nothing you guys can kick back to the appeals panel because their hands are still tied. They can only choose between the administrator's number and the BP original number of $100,000. Once they gave up that $36,000, it's now mathematically impossible to ever get back to BP's number. They're tied to it. And that's important. And I wanted to point that out. And now we'll go to the record citation. Why are they just plain wrong? He didn't read the record? I don't know. But I'll give you record citations. So with regard to the first argument regarding the maintenance costs versus repair costs, this is important. Volume 3 of the record has every financial document you could possibly need. In particular, my clients submitted an Excel spreadsheet of the record 643 to 653. And the record on appeal shows, the P&L statements show that under the category or title maintenance and repairs, my clients only had repair costs. That's why 100% of that number goes to repairs. And the record shows that. On record citation 741 and 922, there were no maintenance costs listed in my client's P&L statements at all. That's why the claims administrator accountants gave 100% of the repair costs to my client. This appeal panel didn't seem to agree with that. Or how would you say, interpret, while BP may have a valid point with regard to the repair expenses? It does seem to me the appeal panel, unless I'm talking about apples and you're talking about oranges, did at least see a question. So, and I latch on to the word may. Well, absolutely, but they're saying we don't need to resolve it, but it does seem to me that what you're trying to say is this is self-evident. Well, no. It sounds to me as if it's not. So in the general BEL methodology spreadsheet, which is record on appeal 921 to 922, the claims accountants specifically identified separately building, and this is in quotes, building repairs, repairs excluding maintenance. That word's in there. Underneath, equipment repairs. Repairs excluding maintenance. My client only had three, on all of the P&L statements for two years, only three repair lines. Building repairs, equipment repairs, and pest control. Now, I stop on pest control for a second. The accountants found pest control was not a repair and took it out. And in that same general ledger, in that BEL methodology 921 to 922, they excluded pest control as a repair, and next to it they wrote contract service. That is exactly the analysis BP's asking the accountants to do.  It's in the record. And if you look not at the titles of the categories, but the actual words themselves, which is the holding from Texas Gulf, building repairs was found to be repairs excluding maintenance. Equipment repairs was found as repairs excluding maintenance. And pest control was taken out as a contract service. My client is entitled to 100% of that $4,320.07 according to the claims administrator accountants. Not to my client. My client would have liked to have kept pest control as a repair. We believe it was a repair because it's not on a contract service. You're only calling them in when times are bad. In particular, and this is actually important on the next point, if you don't have any questions about maintenance costs versus repair costs, I think I thoroughly showed the record supports of finding about 100% of that repair to my client. Next, this argument about supply categories. Texas Gulf is completely different for this reason. The claims administrator accountants, the PWC accountants, submitted a number. The claimant disagreed with it and submitted their own number. Claimants were like BP in this case. The appeals panel decided to choose the claimant's numbers over the claim administrator accountants. And I actually heard an oral argument on that case. And counsel in that case said this court has to rely on the army of accountants and their knowledge and expertise on how to classify supplies. That's this case. So what happened was there is a line item in here in the handout I gave you under multiple sets of P&Ls, line item 7. The claimant provided multiple sets of P&Ls. The initial set was created for the settlement, and the following sets were direct QuickBook exports into Excel. One of these sets separated the monthly transactions by location, and the set utilized was the consolidated P&L for the two claiming locations. Then they go on in item 9 talking about P&L variances. Those are P&L variances from the tax returns. And they talk about below, under 10, seasonality and other income. They did a full analysis. And that's shown on the Record on Appeal at that document, page 900. Now, what's missing in this table, Your Honor? The discussion of supplies. You know why? There was no problem with it, none. In fact, I have a citation for you, a different one. In Record of Appeal 890 to 896, there was a detailed e-mail communication between the accountants and my client. In that e-mail conversation is a request of my client. And guess what it says. I'll read it to you. It's number two request, the second request of my client. And it states as follows. The net income closely reconciles between the books and the tax return. However, it is unclear how the payroll taxes and employee benefit accounts on the P&L consolidate and to reach the amounts reported on the corresponding tax return. Please provide a book to tax reconciliation that illustrates how the P&L and payroll slash employee benefit accounts are recorded on the tax return. What's that tell you, Your Honor? They absolutely did reconcile it. Everything he said is wrong. There is no, they absolutely reconciled everything. Every discrepancy was reconciled. There are no discrepancies. And this sheet is important because it's silent as to the supply discrepancies because there wasn't any. The only discrepancies are laid out on the calculation notes of the accountants and between the e-mail communications between the accountants and my client, which is reflected on the record as 890 through 896. So on both grounds, my clients win here today. There is no problem as to any of the factual reconciliations. There is no problem, and we're absolutely in harmony with it. As Gove Holding states, this court holds that the settlement agreement requires claim administrators to use their independent judgment and classify expenses as fixed or variable according to their substantive nature rather than rational basis review of the claimant's own descriptions. That's not this case. We didn't submit any descriptions. We relied on the administrator or accountants. But even then, that's what the administrator or accountants did. If this case went before Texas Gove, I don't think they would have liked the ruling. They're lucky Texas Gove came before our case because I'm literally here arguing on behalf of those accountants. They're not here. I'm here. The claimant's here. And we're arguing to uphold their calculations, and we're saying under Section 6.2 of the settlement agreement and the exhibits attached to it, the claims administrators did their job. That means I'm arguing for enforcement of that settlement agreement. And under 17.d.5, the appeal panel did not have... You cited the... Judge, you cited the exceptions to when the appeal panel should take it up is when there's new documents or information or when there's insufficient information. Neither of those two triggers were touched in this case. So there was nothing to send back to the claims administrator. So under the settlement agreement, the appeal panel has to pick the claims administrator number or the BP number. In this case, as you pointed out, BP's number was so far, and they abandoned about $36,000 anyway, you have to choose the claimant's number, which is really the administrative accountant's number. If you wanted to, Your Honor, I actually thought you were going to ask a little more questions about drilling down on the P&L statements, but BP didn't touch on that at all. And what I could do is really I could go through examples of P&L, the fixed versus variable argument, to show you how the claims administrator actually went and negotiated with my client as to what's fixed or variable. And BP is now coming after the fact. And I think what should be taken from the argument here today, I don't think anything was cited in the record by BP's counsel. I don't think there was one record citation for either their support of the discrepancy in the tax return versus P&L statement or for repairs and maintenance. And that's significant because the record does support the claims administrator accountant's rulings in this case. So this is not such a case where you'd have to decide whether the appeal panels should have sent it back because there was nothing to send back. All right, counsel. Do you have anything else for me, Don? Thank you. Thank you, sir. All right, Mr. Jones, you have reserve of vote. Okay, so there was a lot there. Let me try to keep the two issues separate because I worried that in some of that discussion the two issues were sort of muddied together. So on the first issue, this is the expense misclassification issue that certain expenses labeled repairs were classified as 100% variable when they should have been allocated 50% variable and 50% fixed under Exhibit 4D to the settlement. That is the issue that is controlled by this court's recent published decision in Texas Gulf Seafood. The claimant's argument today that those expense accounts actually only included repairs, that is both a huge surprise to me because I don't believe they've ever argued that before. It certainly doesn't say that in their brief in this court. It's also wrong. The appeal panel itself, though not ruling for us, did acknowledge that BP had a point about this, and that's straightforward because the claimant's own claim acknowledged that these accounts that we're talking about include an undifferentiated mix of both repairs and maintenance. That's on page 645 of the record on appeal. Their tax returns say the same thing, undifferentiated mix of repairs and maintenance expenses. That's on pages 680 and 689 of the record on appeal. And their appeal brief to this court, as I read it, it says we are all in agreement that these accounts are an undifferentiated mix of repairs and maintenance, and therefore the 50-50 rule, 50%-50%, should have been applied. So, again, any argument today that these expenses are only repairs I think is both out of place. It's a surprise at this point, and also it's just not correct. On the second issue, which is a completely separate, discrete, and very important issue for BP and the proper implementation of this settlement agreement, this is the issue that there is a discrepancy between the supplies expenses that are reported on the claimant's profit and loss statements on one hand and its tax returns on the other hand. This is not an issue about classifying the expenses as fixed or variable necessarily. That was the first issue that related to the repair and maintenance expenses. This is just a straight-up discrepancy. You have the tax returns and you have the P&Ls, and both of them list supplies and the numbers don't match. And so it says very clearly in the settlement agreement and in Claims Administrator's Policy 274, which I'll read, it says the settlement program will perform a reconciliation of revenue and total expenses in the claimant's P&Ls and tax returns. Where such reconciliation reveals a material discrepancy between the claimant's P&Ls and tax return, the Claims Administrator will seek to resolve the discrepancy. Will seek to resolve the discrepancy. And, of course, that makes good sense. The whole point of this settlement agreement is to calculate awards that are accurate, right, that compensate claimants for real losses in line with the settlement agreement. And the settlement agreement requires claimants to submit not only their P&Ls but also their tax returns. And the purpose of that is so that the tax returns can be used by the accountants to ensure the accuracy of the revenue and expense figures reported in the P&Ls. That is the whole point of requiring claimants to provide them. The settlement agreement requires that when a discrepancy, a material discrepancy, is identified, again, the Claims Administrator will seek to resolve the discrepancy. That's Policy 274, Exhibit A to the Settlement Agreement, authorizes the Claims Administrator to request any additional information or documentation from the claimant that is necessary to resolve the discrepancy. And that was not done. My problem with the argument, I know I'm kind of cutting you off, but it looks like you want to take all the remainder 30 seconds, so I wanted to jump in. The problem here is how big a mistake is big enough. Obviously the enormous number of claims that have to be processed here, whether it's an army or only a battalion or so of accountants working or not, they have limited resources as well. You're saying that this needs to go back because of the dollar size of the potential error, the dollar size of the clearly established error, because of the uncertainties. How would you categorize the reason this case is one that needs to go back? In a scheme dealing with thousands of claims processed not nearly as carefully as you would like to think a set of judges would, but who knows, in looking just at one case. Why is this one one that needs to go back? I see my time is up. May I answer? Well, the Chief would probably allow that. Yes. Absolutely. Two reasons. First, the settlement program's failure to resolve this material discrepancy between the claimant's supplies expenses reported on the claimant's P&Ls and tax returns is a serious misapplication of this settlement agreement. You're talking about this claimant's. The failure to resolve this claimant's discrepancy. Yes. That is the first reason. The second reason, which is really even more important, is that this is a recurring issue. It has recurred in many claims before. It has led to a split, a division of authority among appeals panels where some appeals panels hold that in circumstances just like the ones here, the appeal panel holds that a remand is necessitated, is mandated to resolve the discrepancy between the P&Ls and tax returns, and in other cases like this one, the appeal panel allows use of the P&Ls to calculate the award without any effort to resolve the discrepancy. And that issue continues to recur not only in this case but in a number of other appeals that are at various stages, either before the settlement program, appeal panel, or pending before Judge Barbier, and some of them involve dollar figures that are substantially higher than the ones here. I don't think anyone should scoff at $107,000, which is the amount at stake here, but this issue is worth potentially millions of dollars in multiple other appeals. And the function of Judge Barbier's discretionary review and this Court's review, importantly, is to resolve divisions of appeal panel authority so that there is consistent guidance and practice in the implementation. Kennedy. Well, Counsel, aren't you saying that the rules are clear but the appeals panel just aren't applying them, that these are supposed to be reconciled, that these discrepancies clearly are supposed to be dealt with? So it's not that new law needs to be made, new controls need to be emphasized over these appeals panels to make sure they're doing what they're supposed to? It seems to me what you're arguing is that they're not — we don't need to clarify the law, we need to get them to do what they're supposed to do, and that's not really our role. Well, the settlement agreement and the rules are certainly clear to me. I think the problem is that they apparently are not clear enough to all of the appeal panels. It's similar to the context of a circuit split that might warrant U.S. Supreme Court review. Certainly the petitioner is arguing that it's absolutely correct, but there's a circuit split and it needs resolution. I think that this is a comparable situation, and it's the function of Judge Barbier's discretionary review and this Court's review to resolve appeal panel splits, particularly on issues that frequently recur, and all of that is true here. This is a recurring issue. It's worth potentially millions of dollars in multiple appeals, and it goes to the fundamental accuracy of these compensation awards under this class action settlement. All right. Thank you, Mr. Jones. I believe we have your argument. Thank you. Thank you, Mr. Dixon, for the briefing and argument in the case. This will conclude the orally argued cases for today. We'll take these under submission along with